**WARNING: AT LEAST ONE DOCUMENT COULD NOT BE INCLUDED!**
**You were not billed for these documents.**
**Please see below.**

| Document Number | Document Description | Pages | Document Error |
|---|---|---|---|
| Document 1 attachment | Attachment | 1 | **DOCUMENT COULD NOT BE RETRIEVED! However, it may still be viewable individually.** |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| FUNDS IN THE AMOUNT OF | ) | Judge |
| $75,000 IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

## **VERIFIED COMPLAINT FOR FORFEITURE**

The United States of America, by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, for its verified complaint against the above-named defendant funds alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as follows:

### **Nature of the Action**

1.      This is a forfeiture *in rem* brought pursuant to 21 U.S.C. § 881(a)(6), for forfeiture of the defendant funds in the amount of $75,000 United States currency.

2.      This complaint is verified by the attached affidavit of Drug Enforcement Administration ("DEA") Task Force Officer M. Ronald Brunzie ("TFO Brunzie"), which is fully incorporated herein.

### **Jurisdiction and Venue**

3.      This Court has jurisdiction over an action commenced by the United States as the plaintiff under 28 U.S.C. § 1345, and over an action for forfeiture *in rem* under 28 U.S.C. § 1355(a).

4.     This Court has *in rem* jurisdiction over the defendant funds pursuant to 28 U.S.C. § 1355(b)(1)(A), as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois.

5.     Venue is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a) as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois, and 28 U.S.C. § 1395(b) as the defendant funds were found within the Northern District of Illinois.

6.     The defendant funds are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as the funds (i) were furnished and intended to be furnished in exchange for illegal drugs; and/or (ii) are the proceeds from the sale of illegal drugs; and/or (iii) were funds used and intended to be used to facilitate illegal drug trafficking, in violation of 21 U.S.C. § 841, *et seq.*

## Factual Allegations

7.     On September 18, 2017, DEA law enforcement officers assigned to the DEA Chicago Interdiction Group ("DEA Group") at Midway International Airport in Chicago, Illinois, were alerted to the suspicious travel itinerary of Trung Quoc Nguyen ("Nguyen").

8.     Specifically, Nguyen was traveling alone with one checked bag and was traveling from Raleigh-Durham, North Carolina to San Jose, California through Chicago, Illinois, aboard Southwest Airlines flight number 450/6344.   Nguyen's ticket was purchased less than 16 hours prior to departure.

9.     Based upon his training and experience, the affiant states that drug proceed couriers often purchase one-way tickets, travel alone in private suites, and buy the tickets a day or so prior to the scheduled departure. Additionally, the affiant states that San Jose, California, is a known source area for drug trafficking. Further, based upon the affiant's training and experience, those who transport illegal drugs, or the proceeds of illegal drug trafficking, often keep them on their

2

person or accompanying bags or suitcases. Based upon the above information, DEA agents sought to interview Nguyen while he was at Chicago's Midway Airport enroute to San Jose, California.

10. On September 18, 2017, at approximately 6:00 p.m., TFO Brunzie, Task Force Officer Michael Ruiz ("TFO Ruiz"), Task Force Officer Ed Sobkowiak ("TFO Sobkowiak"), Special Agent Kevin Frankel ("SA Frankel") and others were at Gate B-19. At the time, the agents were dressed in casual civilian attire, with no weapons, radios or other police paraphernalia visible.

11. Shortly afterward, agents observed a male exit the jet way area with the same likeness in the photograph the agents had obtained of Nguyen. TFO Brunzie, SA Frankel and Special Agent Luis Mendez ("SA Mendez") approached Nguyen, identified themselves to him by displaying credentials and a badge and requested to speak to Nguyen. At the time, Nguyen inspected the credentials and badge, and was advised he was not under arrest or in any trouble and did not have to speak with agents.

12. After Nguyen agreed to speak with agents, he was asked to produce a form of identification and his boarding pass. TFO Brunzie noticed Nguyen hands were visibly shaking when he produced a California driver license. Nguyen also located and handed over his boarding pass. TFO Brunzie noted the information and handed the documents back to Nguyen.

13. TFO Brunzie then asked Nguyen about his travel itinerary. Nguyen stated he was traveling to San Jose where he lives. TFO Brunzie asked Nguyen if he went to Raleigh-Durham, North Carolina for business or pleasure. Nguyen said he went to visit a friend but was vague about who the friend was. When asked how long did he stay in North Carolina, Nguyen replied since Saturday, September 16, 2017. Nguyen was asked where he stayed while in North Carolina and he replied at the Four Points Sheraton Inn. TFO Brunzie asked if he had receipts from the hotel.

3

Nguyen replied no. TFO Brunzie asked Nguyen how many bags he checked when he flew to Raleigh on Saturday. Nguyen replied he checked two bags. When asked how many bags he checked today with Southwest, Nguyen replied one. TFO Brunzie asked Nguyen what happened to the other bag.   Nguyen stuttered on his response and said he left it with his friend because he did not need it.

14.     TFO Brunzie noted that Nguyen had a black backpack on his shoulder and was asked by TFO Brunzie if he was traveling alone.   Nguyen replied yes.   During the interview, TFO Brunzie observed that Nguyen was nervous, never attempted to make eye contact, and was standing away from agents while being interviewed.   When asked by TFO Brunzie if he packed his luggage himself, Nguyen became evasive and finally answered affirmatively.

15.     When asked if he had any drugs or electronics on him or in any of his luggage. Nguyen stated he did not have any drugs but had a cell phone.   TFO Brunzie then asked Nguyen if he had any large amounts of currency on him or in his luggage. Nguyen responded that he only had a couple of hundred dollars in his wallet that was located in his back pocket.

16.     When TFO Brunzie asked if there was currency in his checked bag, Nguyen replied no.   At this time, TFO Brunzie asked Nguyen if agents could search all of his bags for any items that they discussed in order to verify his statements.   Nguyen said yes, and handed his backpack to SA Frankel to search.   SA Frankel searched the backpack with negative results.

17.     TFO Brunzie asked Nguyen the color of his checked bag.   Nguyen stated black and handed TFO Brunzie a key to search the checked luggage.   TFO Brunzie then thanked Nguyen for his cooperation and advised him that agents would bring back the luggage key to his departure gate.   Nguyen said ok and began to quickly walk away from agents.

4

18.     TFO Ruiz retrieved Nguyen's checked bag and informed TFO Brunzie the bag did not appear to have a key lock.   Agents again located Nguyen and asked him again if the key he provided was the one for his checked bag.    Nguyen replied yes. TFO Brunzie asked Nguyen again if any items discussed earlier, like currency were in his bag. Nguyen put his head down, paused for a long time, and said currency was in the checked bag but he did not know how much.

19.     When asked if anyone had given him the currency to take to San Jose, and he responded yes.   At the time, TFO Brunzie informed Nguyen that he was not under arrest, but the currency was going to be seized for further investigation.    TFO Brunzie explained to Nguyen that he could accompany the agents for a receipt for the currency.    Nguyen agreed to go with agents to the DEA office for a receipt.

20.     TFOs Ruiz and Sobkowiak brought the checked black bag to the DEA Midway office.   Agents observed a Southwest bag tag on the luggage which had Nguyen's name printed on it.   Agents then proceeded to open the suitcase and found a small amount of clothing items located inside the large suitcase.    Upon further observation, agents located large amounts of cash concealed in the clothing.   See Exhibit 1 and 2. When asked if those were his clothes, Nguyen stated his friend had provided him with the clothing.

21.     TFO Brunzie then asked Nguyen about the source origin of the cash.   Nguyen stated his friend, "An Vo," who resides in San Jose had given him the cash to bring to California. Nguyen further stated that one in California, "An Vo" would call him and advise where to bring the cash.   When TFO Brunzie asked where "An Vo" was currently located, Nguyen replied that "An Vo" was driving to California from North Carolina.

22.     TFO Brunzie asked Nguyen if he has any contact information for "An Vo." Nguyen stated the only had a phone number which was (669) 377-****.   When TFO Brunzie

5

asked him how he was being paid to transport the cash to California, Nguyen stated $500 but was not going to take it.

23.     Subsequently, inside the DEA office, Nguyen executed a Consent to Search form and a Disclaimer of Ownership form. See Government Exhibits 3 and 4.   The disclaimer form signed by Nguyen states the cash did not belong to him, he had no legal claim to the cash, and had no knowledge as to the owner or origin of the cash.   See Exhibit 4.   Nguyen indicated that he signed each document of his own free will and was forced or threatened into signing the forms. *Id.*

24.     As Nguyen was about to leave he stated he had lied earlier and that he made up the name and phone number for "An Vo."    Subsequently, agents tried the number from "An Vo" and it was disconnected.

25.     At the time, Nguyen now told the agents that the cash was from gambling debts that Nguyen had collected in the Raleigh area.    TFO Brunzie asked Nguyen where, and from who did had he obtained the cash. Nguyen did not provide or was unable to provide names and addresses of the people he collected the gambling debts from while in Raleigh.

26.     On September 18, 2017, drug detector canine "Gander," who is owned by Amtrak, conducted a drug detection investigation on the currency.   Gander gave a positive alert to the presence of a drug odor on the currency.

27.     Gander was last certified before January 13, 2017, and was certified in the detection of drug odors including cocaine, heroin, methamphetamine, marijuana and ecstasy.

28.     In total, $75,000 in United States currency was recovered from Nguyen in the following denominations: 214 one hundred dollar bills, 70 fifty dollar bills, 2,451 twenty dollar bills, 98 ten dollar bills, and 20 five dollar bills.

29.     For the reasons stated herein and in the attached affidavit, the defendant funds in the amount of $75,000: (i) were monies furnished and intended to be furnished in exchange for illegal drugs; and/or (ii) are the proceeds from the sale of illegal drugs; and/or (iii) were monies used or intended to be used to facilitate an illegal drug transaction in violation of 21 U.S.C. § 841, *et seq.*, and therefore are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America requests:

a.     the defendant funds be proceeded against for forfeiture and condemnation;

b.     due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed;

c.     this court adjudge and decree that the defendant funds be forfeited to the United States and disposed of according to law; and

d.     any trial be before a jury.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney


By: s/Daniel E. May
    DANIEL E. MAY
    Assistant United States Attorney
    219 South Dearborn Street, 5th Floor
    Chicago, Illinois 60604
    (312) 353-8694
    daniel.may@usdoj.gov

7

STATE OF ILLINOIS    )
                           ) SS
COUNTY OF COOK    )

## AFFIDAVIT

M. RONALD BRUNZIE, being duly under oath states as follows:

1.      I am a Task Force Officer with the Drug Enforcement Administration and have been so assigned since 2014. My duties and responsibilities as a Task Force Officer with DEA involve investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code. I am also a police officer with the Lockport, Illinois Police Department and have been so employed for approximately 22 years. As part of my duties as a Lockport police officer, I have been assigned for several years as a tactical officer involved in investigations of the Illinois Controlled Substance Act and the Cannabis Control Act.

2.      I have read the complaint in this matter and the facts alleged are true and correct to the best of my knowledge, information, and belief based upon my own personal knowledge as well as information I have received from other sources. Because this affidavit is for the limited purpose of establishing that this property is subject to forfeiture, it does not include each and every fact known to me concerning this investigation or the conversations described therein.

3.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _10_ day of January 2018, in Chicago, Illinois.

M. RONALD BRUNZIE
Task Force Officer
Drug Enforcement Administration





## Disclaimer of Ownership

I, _Trung Quoc Nguyen_ , by my signature below, indicate that

_United States Currency_ which was seized by Agents/Officers
(Item That Was Seized)

_9-18-17_ at _5700 Cicero Ave_ _Chjo_ ,
(Date)      (Street Location)      (City)

_Ill_ and will be inventoried by the above agency, does not belong to
(State)

me. I further state that I have no claim or legal interest to this seized item,

and that I have no knowledge pertaining to the owner and/or origin of above

stated item. I am signing this affidavit voluntarily and of my own free will.

Signed: _____
(Signature Of Person From Whom Item Was Recovered)

On this date of: _9-18-17_    Time: _6:15_ a.m. (p.m.)

Signed at: _Midway / DEA 6 fha_
(Location Where Document Was Signed)

Witnessed by: _TFO ____ ne_

Witnessed by: _Lim Mang, SA_

Case Number: _I1-17-0294_

Exhibit #: N - _____

GOVERNMENT
EXHIBIT
**4**